**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

DAPHNE HILL                                              PLAINTIFF

V.                                                      CIVIL ACTION NO.
                                                        1:09-CV-165-SAA

MICHAEL J. ASTRUE,
Commissioner of Social Security                         DEFENDANT

## MEMORANDUM OPINION

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the

decision of the Commissioner of Social Security denying the application of plaintiff Daphne Hill

disability insurance benefits (DIB) under Title II of the Social Security Act. This action is

brought under § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). The district

court's jurisdiction over Hill's claim rests upon 28 U.S.C. § 1331. Because both parties

consented to have a United States Magistrate Judge conduct all proceedings in this case in

accordance with the provisions of 28 U.S.C. § 636 (c), including an order for entry of a final

judgment, the undersigned has authority to issue this opinion and the accompanying final

judgment.

## PROCEDURAL HISTORY

Hill filed her Title II application for a period of disability benefits on April 9, 2007,

alleging the onset of her disability was December 21, 2006. Tr. 14. The claim was denied

initially and on reconsideration *Id*. The plaintiff timely filed a request for a hearing before an

administrative law judge [ALJ], and the hearing was held on July 23, 2008. *Id*. On August 25,

2008, the ALJ issued his decision denying the claim. Tr. 14-24. The Appeals Council denied

Scott's request for review, Tr. 1-4, making the ALJ's decision the final decision of the

Commissioner, now ripe for the court's review.

**FACTS**

Hill was born on February 13, 1957 and was forty-nine years old at the time of the ALJ hearing.  Tr. 204. Hill completed high school and CNA training.  Tr. 175.  She held many jobs in the past, but her past most relevant work included work as a child monitor, hospital cleaner, nurse's aide, cleaner/housekeeper, production assembler, cashier/checker, and mail clerk.  Tr. 23. Tr. 32-33.  Hill alleged disability due to left knee pain, bilateral hand pain and swelling, and limitations related to depression and paranoia.  Tr. 30, 37-38 and 40.

The ALJ determined that the plaintiff had severe impairments that included hypertension, obesity, borderline intellectual functioning and dysthymic disorder. Tr. 16. Although the ALJ determined that these impairments caused more than minimal limitation of the claimant's ability to perform basic work functions, he concluded that the hypertension, obesity or dysthymic disorder did not meet, either  in combination or individually, any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr.  20-21. After reviewing Hill's symptoms and the extent to which the symptoms could be considered consistent with the objective medical evidence, the ALJ determined that Hill retained the residual functional capacity [RFC] to lift and carry and push and pull a maximum of 50 pounds occasionally and 25  pounds frequently, stand and walk for 6 hours and sit for 6 hours in an 8-hour day.  Docket Tr. 21-22.   With respect to her mental functioning, the ALJ found that Hill retains "poor" ability to understand, remember and carry out complex job instructions and a "fair" ability to maintain attention and concentration. Tr.  21-22.  Based upon the testimony of the vocational expert [VE], the ALJ found that considering Hill's work experience and RFC, she could return to her previous work and was

consequently not disabled.  Tr. 23-24.

**DISCUSSION**

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1]  The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining her burden at each of the first four levels then the burden shifts to the Commissioner at step five.[2] First, plaintiff must prove she is not currently engaged in substantial gainful activity.[3]  Second, the plaintiff must prove her impairment is "severe" in that it "significantly limits [her] physical or mental ability to do basic work activities . . . ."[4]  At step three the ALJ must conclude the plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2003).[5]  If plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the physical and mental demands of her past relevant work.[6]  At step five the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and

---

[1]*See* 20 C.F.R. § 404.1520 (2009).

[2]*Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991).

[3]20 C.F.R. § 404.1520(b)(2009).

[4]20 C.F.R. § 404.1520(c)(2009).

[5]20 C.F.R. § 404.1520(d)(2009).  If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 404.1525 (2009).

[6]20 C.F.R. § 404.1520(e); 1520(f)(2009).

past work experience, that she is capable of performing other work.[7]  If the Commissioner proves

other work exists which the plaintiff can perform, the plaintiff is given the chance to prove that

she cannot, in fact, perform that work.[8]

The court considers on appeal whether the Commissioner's final decision is

supported by substantial evidence and whether the Commissioner used the correct legal standard.

*Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th

Cir. 1990).  "To be substantial, evidence must be relevant and sufficient for a reasonable mind to

accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a

preponderance . . . ." *Anderson v. Sullivan,* 887 F.2d 630, 633 (5th Cir. 1989) (citation omitted).

"If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must

be affirmed."  *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales,*

402 U.S. 389, 390, 28 L.Ed.2d 842 (1971)).

Hill contends that the Commissioner erred by failing to consider the evidence from

any examining physician and to accord the proper weight to Hill's treating physician's

evaluation.

Hill alleges that the ALJ erred by finding that "no physician who saw Hill had any

credibility."  Docket # 15, p.9.  Indeed, Hill's treating physician and the consultative examining

physician both assessed Hill's RFC to be less than that determined by the ALJ.  Dr. Mitchell,

Hill's treating physician, completed a medical source statement on December 27, 2007,  in

which she stated that plaintiff could only occasionally lift 10 pounds and frequently lift less than

_____

[7]20 C.F.R § 404.1520(g)(1)(2009).

[8]*Muse*, 925 F.2d at 789.

10 pounds; her ability to stand/walk was limited to 2 hours in an 8-hour work day; must periodically alternate sitting with standing; could push/pull with both upper and lower extremities.; and could only occasionally climb, balance and stoop and never kneel, crouch or crawl. Tr. 275-76.  Dr. Mitchell also  imposed environmental limitations in that Hill must avoid temperature extremes, vibrations, and hazards such as machinery, heights, fumes and odors. Tr. 278.

Dr. Frenz examined Hill on March 1, 2008 and determined that she could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk only 4 hours in an 8-hour day with interruptions every half hour and sit for an unlimited time, never climb, but could only occasionally balance, stoop, crouch, kneel and crawl.  Tr. 297-98.  Frenz also imposed environmental restrictions including heights, use of machinery, temperature extremes, humidity and vibration.  Tr. 298-99.  He confirmed that Hill's limitations were consistent with the type and severity of the diagnoses, that the diagnoses were confirmed by objective findings and that his opinion was not based primarily on Hill's subjective complaints.  Tr. 299.

Finally, Dr. Morris conducted a comprehensive mental status examination of Hill on February 19, 2008.  Tr. 283-289.  Dr. Morris estimated that she possessed borderline intelligence,  Tr. 285, and diagnosed her with panic disorder with agoraphobia, dysthymia and polysubstance abuse in partial remission.  Tr. 286.   Dr. Morris concluded that from a psychological perspective, Hill may be significantly impaired and thus unable to perform routine repetitive work related tasks.  Tr. 286.  Further, he thought that with mental health intervention her condition would improve. Tr. 286.  Hill was referred to Region 3 for mental health treatment.  *Id.*   At the hearing in July, Hill testified that she had been receiving mental health

treatment for about two months and that it was helping somewhat.  Tr. 46.

In determining Hill's RFC, the ALJ found that there was insufficient objective medical evidence to support her stated limitations.  Tr. 22.   He discounted Dr. Mitchell's Medical Source Statement findings and opinions because her treatment notes did not support her limitations.  Tr. 17.  The ALJ discounted Dr. Frenz's MSS findings and opinions because his assessed restrictions "appear based primarily upon the claimant's subjective allegations rather than clinical evidence or objective findings."  Tr. 18. The ALJ initially afforded limited weight to Dr. Morris's opinion because it appeared inconsistent, but later in the same paragraph afforded "greater weight" to Dr. Morris's conclusion that in the absence of Hill's "asserted and incredible" panic attacks she was not significantly psychologically impaired. Tr. 19.  Finally, the ALJ found that the record evidence undercut Hill's credibility.  Tr.  23.[9]

Dr. Culpepper, the non-examining agency physician, found none of Hill's impairments were "severe."  Although the ALJ purported to give "some weight" Culpepper's opinions, the ALJ again simply chose only that portion of the doctor's report which he desired to support his finding that some of plaintiff's claimed impairments were not "severe."  The court finds significant that Dr. Culpepper's opinions were reached August 8, 2007, only after his review of limited medical records available on that date; many of plaintiff's examinations had not been performed and many medical records and reports did not even exist at that time.

As a lay person, the ALJ is not qualified to interpret medical data.  *Perez v. Secretary of Health and Human Services*, 958 F.2d 445, 446 (1st Cir. 1991).  Dr. Mitchell's MSS and Dr. Frenz's MSS were based upon physical examination and treatment of Hill, and the

---

[9]  The ALJ described Hill's testimony as "incredible" no less than five times in one paragraph.

ALJ may not substitute his opinion for their medical opinions. The ALJ adopted an RFC that was significantly greater than that determined by Dr. Mitchell or Dr. Frenz without any evidence to support that RFC. Hill testified that her pain was at a level of seven out of ten in her foot and knees without medication. Tr. 32-33. Hill testified that she could only stand two hours at a time without a break and walk 75 yards without a break, yet the ALJ found that she could walk or stand for six hours a day. Tr. 36-37, 21. Further, Hill testified that she can only sit for two hours at a time, while the ALJ determined that she could sit for six hours a day. Tr. 37, 21. Finally, Hill stated that she could only lift groceries that were not too heavy, maybe 2-3 pounds, yet the ALJ determined that she could lift 50 pounds occasionally and 25 pounds frequently. Tr. 37, 21. In light of the medical records and medical opinions presented and Hill's testimony, the court cannot conclude that there was substantial evidence to support the ALJ's determination of Hill's RFC.

Moreover, the ALJ may not select certain evidence from Dr. Morris's evaluation to support his own lay opinions, affording limited weight to certain determinations and greater weight to other statements. The ALJ recognized that Hill had borderline intelligence, but failed to discuss in his opinion or in the hypothetical scenarios presented to the VE how this impairment would affect her ability to work. Tr. 49-50. When questioned by Hill's attorney, the VE testified that physical limitations in combination with mental limitations would preclude Hill from returning to her previous work. Tr. 51. An ALJ may not "pick and choose" only that evidence which supports his decision, but must address and make specific findings regarding the supporting and conflicting evidence, the weight to give that evidence, and reasons for his conclusions regarding the evidence. *Armstrong v. Sullivan,* 814 F. Supp 1364, 1373 (W. D. Tex

1993); *See also DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir.1983).

Further, the court finds that the ALJ erred in failing to develop the record sufficiently to enable him to base his decision on substantial evidence. When the ALJ discounted Dr. Morris's opinion, and there was no other medical source statement or medical opinion regarding Hill's mental health to rely upon, the ALJ had a duty to fully develop the facts relevant to Hill's claim of disability. *See Jessee v. Barnhart*, 419 F. Supp.2d 919 (S.D.Tex., 2006). Where the medical evidence is inadequate, the Commissioner has an affirmative duty to seek additional information to reach a decision. 20 C.F.R. §§ 404.1512(e), 416.912(e)(2009). This is not difficult: according to Social Security Administration policy, the Commissioner may use any method to contact the medical source and obtain the information, including but not limited to telephone calls, letters or informal reports. SOCIAL SECURITY LAW & PRACTICE, § 37.23, p.39. Hill was receiving mental health treatment at the time of the hearing; with knowledge of Dr. Morris's guarded prognosis, the ALJ had a duty to contact him for more information or explanation regarding her capabilities.

The ALJ's lay opinions and observations cannot act as substantial evidence when the record contains contrary medical evidence. *Arrigo v. Heckler*, 604 F. F.Supp. 401, 403 (D.C. Pa., 1985). In the absence of supporting medical evidence, an administrative determination that a claimant with an impairment can perform a particular level of work may require a remand for further development of the record and redetermination of benefits. SOCIAL SECURITY LAW & PRACTICE, § 43.14, p.53. In this case, failure to fully develop the necessary facts regarding the plaintiff's mental health limitations, in combination with the ALJ's RFC determination inapposite to the medical opinions, means that the ALJ's decision was not based

on substantial evidence, and remand is appropriate.  As such, this case must be remanded to the

Commissioner for further proceedings, in accordance with this opinion.  A separate final

judgment in accordance with these findings shall issue this day.

   This the 10th day of June,  2010.

          /s/ S. Allan Alexander     
          UNITED STATES MAGISTRATE JUDGE